## Richmond

### THE COMMUNITY BANK

### V.

### MARY T. WRIGHT

June 6, 1980.

Record No. 780907.

Present: All the Justices.

*James F. Andrews* (*Lavenstein & Andrews,* on brief), for appellant.

*Stylian P. Parthemos* (*Joseph S. Bambacus,* on brief), for appellee.

THOMPSON, J., delivered the opinion of the Court.

On March 29, 1977, Mary T. Wright signed a 90-day note in the amount of $7,500 payable to the order of The Community Bank. In this appeal we are to determine the legal liability of Mary T. Wright on this note.

In March 1977, James W. Wright, Mary T. Wright's husband, met with the president of The Community Bank, Nathan S. Jones, III, seeking a $7,500 loan from the bank. Mr. Wright, already obligated on existing loans from Community Bank, was informed by Jones that his loan request would have to be submitted to the bank's loan committee for its approval. Alternatively, Jones suggested that he could personally approve a loan made directly to Mr. Wright's wife, subject to receipt of a satisfactory financial statement, thereby avoiding the delay involved in obtaining the loan committee's approval. Mr. Wright agreed. A financial statement for Mrs. Wright was prepared and submitted.

Mrs. Wright testified at trial that her husband requested that she go to The Community Bank and "indorse" a note for him, stating that he would go to the bank later to sign the note and take care of any details. Mrs. Wright went to the bank on March 29, 1977. What transpired is in dispute. Mrs. Wright claims she was never advised that she was to be the sole maker of the note and not merely an indorser. Mrs. Wright testified that at one point during the transaction the word "indorse" was used by Jones. Jones testified that he explained over the telephone to Mrs. Wright, prior to her signing, the reason her husband could not be a party to the note. It is the bank's position that the entire loan procedure was such that Mrs. Wright should have known that she was the maker of the note. When the transaction was completed, the entire $7,500 was deposited directly into Mr. Wright's business account.

The note became due on June 25, 1977. On or about June 28, 1977, Mrs. Wright received a notice naming her as the sole maker of

the note and indicating that payment was due. Mrs. Wright, by then separated from her husband, contacted Mr. Wright, and he confirmed that she was in fact the sole maker of the note.

When the note was not paid, Community Bank filed this action asking for judgment in the amount of $7,500, plus interest and collection costs. In her grounds of defense, Mrs. Wright denied that she borrowed $7,500 from Community Bank, but admitted signing a promissory note on March 29, 1977, intending her signature to be that of an indorser for her husband as maker. She alleged that she was fraudulently induced to sign the note and therefore asked that the case be dismissed.

The case was tried before a jury. At the conclusion of all the evidence, Community Bank moved for summary judgment on the ground that Mrs. Wright would be liable on the note whether as a maker or as an indorser. The motion was overruled, and the jury was instructed, *inter alia,* on issues of constructive fraud through breach of a fiduciary or confidential relationship and active fraud. The jury returned a verdict for Mrs. Wright, and the trial court entered judgment on the verdict.

While the plaintiff has assigned a number of errors, we believe that the dispositive issue is whether the failure of the court to enter summary judgment at the conclusion of all the evidence was error.

Mrs. Wright admits signing the note on its face, but claims that she was fraudulently induced to do so by her husband, who represented that she would be signing as an indorser. She further contends that the bank had constructive knowledge of this fraudulent inducement. An examination of the instrument and the applicable statutes[1] reveals that Mrs. Wright's ultimate liability, whether as maker or indorser in this situation, would be the same.

---

[1] Code § 8.3-414. *Contract of indorser; order of liability.*—(1) Unless the indorsement otherwise specifies (as by such words as "without recourse") every indorser engages that upon dishonor and any necessary notice of dishonor and protest he will pay the instrument according to its tenor at the time of his indorsement to the holder . . . .

Code § 8.3-507. *Dishonor* . . . .—(1) An instrument is dishonored when . . . (b) presentment is excused and the instrument is not duly accepted or paid . . . .

Code § 8.3-511. *Waived or excused presentment, protest or notice of dishonor or delay therein.*—. . . .(2) Presentment or notice of protest as the case may be is entirely excused when (a) the party to be charged has waived it expressly or by implication either before or after it is due; . . . (5) A waiver of protest is also a waiver of presentment and of notice of dishonor even though protest is not required. (6) Where a waiver of presentment or notice or protest is embodied in the instrument itself it is binding upon all parties; but where it is written above the signature of an indorser it binds him only.

The note provides in part that "[e]ach person liable herein in any capacity, (i) waives homestead exemption, presentment, demand, protest and notice of all kinds respecting this note." By virtue of the relevant statutes and the language of the instrument itself, the defendant has rendered herself primarily liable on the instrument. *Cf. Barrett* v. *Vaughan,* 163 Va. 811, 178 S.E. 64 (1935). The court, of necessity, must reach the same result when the allegation of fraud is considered. An allegation of fraud in the abstract does not give rise to a cause of action; it must be accompanied by allegation and proof of damage. *Lloyd* v. *Smith,* 150 Va. 132, 149, 142 S.E. 363, 367 (1928).

In *Cooper* v. *Wesco Builders, Inc.,* 76 Idaho 278, 281 P.2d 669, 672 (1955), the principle is succinctly stated: " 'Negatively framed, the rule as to what constitutes damage, in any case, may broadly be stated to be that there is no damage where the position of the complaining party is no worse than it would be had the alleged fraud not been committed.' "

Counsel for the defendant further argues that if his client is forced to pay the note, she will lose the use of the instrument as evidence against her former husband and may be subject to certain oral defenses. We reject this argument as it overlooks clearly defined rights of parties secondarily liable. *See Payne* v. *Payne,* 219 Va. 12, 251 S.E.2d 283 (1978). See also Code § 49-27.[2]

The motion for summary judgment by the plaintiff at the conclusion of all the evidence should have been granted.

The judgment of the trial court will be reversed and the case remanded for a determination of the amount due by the defendant to the plaintiff on the instrument, judgment to be entered accordingly.

*Reversed and remanded.*

---

[2] 49-27. *Surety's remedy against principal for money paid.*—If any person liable as . . . *endorser,* . . . pay, in whole or in part, such note, bond or other demand, or any judgment, decree or execution rendered or awarded on account of such liability, the person having a right of action for the amount so paid may, by motion in the court in which the judgment, decree or execution was rendered or awarded, obtain a judgment or decree against any person against whom such right of action exists for the amount so paid, with interest from the time of payment, and five per centum damages on such amount. The person so paying, in whole or in part, any such judgment, decree or execution rendered or awarded on account of such liability, or any such note, bond or other demand, shall, by operation of law, in addition to the remedy above provided, be substituted to and become the owner of all of the rights and remedies of the creditor for the enforcement and collection of the amount or amounts so paid, and shall be deemed the assignee thereof. [Emphasis added.]