Laura **SIEMONSMA,** Executrix of the Estate of Gerald Siemonsma, Deceased, Plaintiff and Appellee,

v.

**DAVID MANUFACTURING CO.,** A Foreign Corporation, Defendant, Third Party Plaintiff and Appellee.

**PETERSON GRAIN SYSTEMS, INC.,** A Domestic Corporation, Defendant, Third Party Plaintiff and Appellant,

v.

**DAKOTA INSURANCE AGENCY,** Milbank, South Dakota, and Transamerica Insurance Services, and Roger Dwelle, d/b/a Dwelle Electric, Third Party Defendants and Appellees.

No. 16106.

Supreme Court of South Dakota.

Considered on Briefs Sept. 1, 1988.

Decided Dec. 21, 1988.

---

Michael J. Schaffer of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for plaintiff and appellee.

Derald W. Wiehl of May, Johnson, Doyle & Becker, Sioux Falls, for defendant, third party plaintiff and appellee David Mfg. Co.

Todd D. Boyd of Gunderson, Evenson & Boyd, Clear Lake, for defendant, third party plaintiff and appellant Peterson Grain Systems, Inc.

Paul I. Hinderaker of Austin, Hinderaker, Hackett & Hopper, Watertown, for third party defendant and appellee Dakota Ins. Agency.

Gale E. Fisher of Fisher & Hughes, Sioux Falls, for third party defendant and appellee Transamerica Ins. Services.

Acie W. Matthews of Pruitt, Matthews & Muilenburg, Sioux Falls, for third party defendant and appellee Dwelle Elec.

MILLER, Justice.

In this appeal, we affirm the trial court's granting of summary judgment and hold (1) that a liability insurance company had no duty to advise an insured of the termination of the agency relationship between the insurance company and the local insurance agency and (2) that the company, under the facts presented, had no duty (a) to advise the insured of its intention not to renew insured's policy or (b) to procure replacement insurance.

## FACTS

Plaintiff Laura Siemonsma instituted an action against David Manufacturing Company and Peterson Grain Systems Inc. (PGS) for the wrongful death of her husband Gerald, who was killed on October 16, 1983, while attempting to repair a grain stirator which had been manufactured by David Manufacturing and installed by PGS on the Siemonsma farm. PGS, through Dakota Insurance Agency (Agency), had acquired liability insurance from Transamerica Insurance Company (Trans-

america) for the period of October 1, 1981, to October 1, 1983. Because the death was after the policy had expired, Transamerica denied coverage. PGS brought a third-party action against Agency and later, by an amended third-party complaint, PGS also commenced a third-party action against Transamerica.

Transamerica had entered into an agreement with Agency on August 15, 1980, which agreement authorized Agency to solicit, accept and bind policies on Transamerica's behalf. The agreement provided that either party could terminate their relationship upon not less than ninety days written notice to the other party.[1]

PGS had been a customer of Agency since the spring of 1981 and had been insured by various other companies represented by Agency. Agency, with PGS's knowledge and approval, had automatically renewed PGS's coverage on other occasions. Agency first placed PGS's coverage with Transamerica for the period of October 1, 1981, to October 1, 1982. On September 13, 1982, Agency automatically renewed the Transamerica policy for a like period (until October 1, 1983). Agency mailed the renewed policy and a notice of policy renewal to PGS.

Pursuant to the Agency/Transamerica agreement, Transamerica notified Agency that it was terminating their relationship effective April 15, 1983, and that Transamerica would not accept renewals after June 15, 1983. Agency acknowledged receipt of the notice of termination on April 18, 1983.

On August 10, 1983, Transamerica sent Agency the following communication concerning the PGS policy:

Please make arrangements to place this coverage in another market on expiration date 10–1–83 since your agency is no longer representing our company.

Please also provide us with written confirmation of the replacement.

An Agency representative acknowledged receipt of the communication but testified in his deposition that he had simply filed it and did not place the PGS coverage with another insurance company. He gave PGS no notice of any of these dealings with Transamerica.

PGS assumed that Agency would automatically renew its insurance as previously had been done. Neither Agency nor Transamerica advised PGS of the termination of the agency relationship or that the policy would not be renewed.

Upon receipt of the summons and complaint in the wrongful death action, PGS contacted Agency and learned that its coverage had expired on October 1 and that it (PGS) had been uninsured from October 1 until November 1 (when Agency finally placed PGS's coverage with another company). Don Peterson of PGS stated in his deposition that the agency representative had told him that the error was Agency's fault and that any losses incurred by PGS would be covered by Agency's own errors and omissions policy.

The trial court granted Transamerica's motion for summary judgment on the third-party complaint brought against it by PGS. We affirm.

### ISSUES

### I

WHETHER TRANSAMERICA HAD A DUTY TO ADVISE PGS OF THE TERMINATION OF THE AGENCY RELATIONSHIP BETWEEN TRANSAMERICA AND AGENCY.

■ PGS maintains that Transamerica had a duty to inform it of the termination of the relationship between Transamerica

---

1. This provision was consistent with SDCL 58–30–8.1, which provides:

An insurance company cannot terminate the agency contract of an insurance agent writing fire and casualty lines of insurance except upon ninety days' notice in writing given by the company to the agent, and the company shall, upon a terminated agent's request, extend the coverage of any policy which has been written by said agent in the company and which expires or has its anniversary date during said ninety-day period to the end of the ninety-day period if the insured pays the premium therefor. The company may terminate an insurance policy on its anniversary date if said anniversary date occurs after the expiration of the ninety-day period.

and Agency. PGS further maintains that Transamerica's failure to inform it of the termination, coupled with Agency's previous "automatic renewals" of PGS's insurance, renders Transamerica liable for the loss under the theory of ostensible authority found in SDCL 59-3-3.[2] The crux of PGS's argument is that Agency's failure to automatically renew PGS's insurance, as it had done in the past, may be imputed to Transamerica under SDCL 59-6-3, which provides: "A principal is bound by the acts of his agent under ostensible authority, to those persons only who have in good faith, and without negligence, incurred a liability or parted with value upon the faith thereof." Further, SDCL 59-6-9 states:

Unless required by or under authority of law to employ that particular agent, a principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as part of the transaction of such business; and for his willful omission to fulfill the obligation of the principal.

Even reading these statutes in the light most favorable to the nonmoving party, as required in summary judgment cases, see Wilson v. Great Northern Railway Co., 83 S.D. 207, 157 N.W.2d 19 (1968), we find PGS's arguments to be without merit. SDCL 58-30-8.1 specifically authorizes an insurance company to terminate an agency agreement upon ninety days' notice and also provides that the company may terminate a policy on its anniversary date if such anniversary date occurs after the expiration of the ninety-day period.

Transamerica terminated its agreement with Agency on April 15, 1983. Any policy with an anniversary date after July 15, 1983 (ninety days) could be terminated by Transamerica. PGS's anniversary date

was October 1, 1983. Moreover, the April termination of the Transamerica/Agency relationship relieved Agency of the *authority* to act on Transamerica's behalf, absent the reliance of a third-party on the contract between Transamerica and Agency. *See* Restatement (Second) of Agency § 265(1) (1958). No such reliance has been shown here. The only reliance evidenced in the record is PGS's reliance that *Agency* would automatically renew its insurance. That is insufficient to bind Transamerica after the agency relationship was properly terminated.[3]

## II

### WHETHER TRANSAMERICA HAD A DUTY TO NOTIFY PGS OF ITS INTENT NOT TO RENEW PGS'S INSURANCE OR TO PROCURE REPLACEMENT INSURANCE.

PGS next contends that Transamerica owed it a duty to notify it that Transamerica would not renew its insurance coverage. In the alternative, PGS argues that Transamerica was obligated to procure replacement insurance because of Transamerica's instructions to Agency to procure such coverage for PGS and to advise Transamerica of the same.

■ It is well settled that an insurance company is not required to notify its insured that a premium is due or that a policy will soon expire where the policy is for a definite term and is otherwise unambiguous. *See, e.g., Hoefler v. Farm & City Ins. Co.*, 193 N.W.2d 538 (Iowa 1972); *Gutierrez v. Dairyland Ins. Co.*, 110 Mich. App. 126, 312 N.W.2d 181 (1981); *Cambron v. N.W. Ins. Co.*, 70 Or.App. 51, 687 P.2d 1132 (1984); *Stratton v. U.S. Fire Ins. Co. of New York*, 71 S.D. 422, 25 N.W.2d 239 (1946). This may be modified by statute, as was done in South Dakota in

---

**2.** SDCL 59-3-3 provides:

Ostensible authority is such as a principal intentionally, or by want of ordinary care, causes or allows a third person to believe the agent to possess.

**3.** Had the claim occurred while the policy was in force, but not reported until after the expiration of the policy and termination of the agency

agreement, the result may have been different. *See, e.g., Zukaitis v. Aetna Cas. & Sur. Co.*, 195 Neb. 59, 236 N.W.2d 819 (1975). However, under these circumstances, especially where the claim occurred after the policy had already expired by its own terms, Transamerica cannot be held to be liable to PGS.

1985. *See* SDCL 58–1–14.[4] Thus, prior to the passage of SDCL 58–1–14, Transamerica was under no legal duty to notify PGS of its intent not to renew PGS's policy.[5]

PGS finally claims that Transamerica should be held liable for PGS's loss because of Agency's failure to place PGS's coverage with another insurer. PGS's argument stems from Transamerica's transmittal of a document to Agency instructing Agency to "place this [PGS's] coverage in another market," and to provide Transamerica "with written confirmation of the replacement." PGS claims that these instructions, which were not followed by Agency, created a duty in Transamerica to ensure that PGS received replacement coverage. We disagree. An insurer may have a duty to cover a loss where it has committed or bound itself to issue a policy to the insured and has failed to issue such policy. *See* Appleman Insurance Law & Practice § 8864 (1981). Transamerica's actions, however, do not rise to the level of creating such a duty. Transamerica simply asked for confirmation of Agency's placement of PGS's coverage with another carrier. It was merely a reminder to Agency to fulfill Agency's obligation to Agency's customer. From the record, it does not appear that Transamerica could have required that Agency place PGS's coverage with another carrier or confirm such placement, especially given the fact that the communication came subsequent to the termination of the relationship between Transamerica and Agency. Under these circumstances, Transamerica had no affirmative duty to procure replacement coverage for PGS.

Affirmed.

WUEST, C.J., and MORGAN and HENDERSON, JJ., concur.

SABERS, J., dissents.

---

**4.** As amended by 1985 S.D. Sess.L. ch. 384, insurance companies are now required to send their insureds notices of nonrenewal as well as notices of cancellation. SDCL 58–1–14. However, the basis and commencement of this action took place before the statute was amended.

**5.** It should also be noted that an insurance contract itself may provide that the insurance com-

SABERS, Justice (dissenting).

I dissent for these reasons:

1. TRANSAMERICA, AS PRINCIPAL, IS RESPONSIBLE FOR ITS AGENT'S, DAKOTA INSURANCE AGENCY, NEGLIGENCE OR OMISSION TO ITS INSURED, PETERSON GRAIN SYSTEMS.

The majority opinion sets out the key statute but fails to abide by it.

**59–6–9. Responsibility of principal for agent's negligence or omission.** Unless required by or under authority of law to employ that particular agent, a principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as part of the transaction of such business; and for his willful omission to fulfill the obligation of the principal.

This statute means exactly what it says. In simple language it says that the principal is responsible for its agent's negligence or omission. There is no question in this case but that the principal's agent Dakota Insurance Agency was negligent for failing to notify the insured, Peterson. Further, there is no question that Transamerica is the principal and Dakota Insurance Agency is its agent. The general rule is that the revocation of the agent's authority is not effective between a principal and a third person until that person receives notice of the termination. *Zukaitis v. Aetna Casualty and Surety Co.*, 195 Neb. 59, 236 N.W.2d 819 (1975); 3 Am.Jur.2d *Agency* §§ 50, 52 (1986). A third person does not have notice of the termination unless he knows, should know, has reason to know, or has been given notification. *Restatement (Second) Agency* § 135 (1958). The record does not reveal any such notice to Peterson. Therefore, Dakota Insurance

pany will give notice to its insured of the company's intent not to renew the coverage. Here, however, the contract between PGS and Transamerica made no such provision. Absent such a contractual provision or a legal duty, Transamerica cannot be held liable to PGS for failing to notify PGS that its coverage would not be renewed.

Agency remained Transamerica's agent as to Peterson.

This is a simple case. The facts are simple. The law is simple. We are not dealing here with any theory of ostensible authority as implied in the majority opinion by its reference to SDCL 59–3–3. Pure and simple, we are dealing with SDCL 59–6–9 which provides that Transamerica, as principal, is liable for agent's negligence or omission.

2. TRANSAMERICA HAD A DUTY TO NOTIFY ITS OWN INSURED, PETERSON, OF NONRENEWAL WHERE NONRENEWAL WITH TRANSAMERICA WAS PREVENTED BY TRANSAMERICA'S CANCELLATION OF ITS AGENCY CONTRACT WITH DAKOTA INSURANCE AGENCY.

Although it should not be necessary to reach this question, Transamerica's contract, as insurer, is with its own insured, Peterson. As such insurer, Transamerica had a duty to notify its insured of nonrenewal when that nonrenewal resulted from Transamerica's cancellation of its agent, Dakota Insurance Agency. Transamerica confirmed this when it notified its agent Dakota Insurance Agency to give confirmation to it of notification to its insured. As indicated above, Dakota Insurance Agency failed and Transamerica is liable not only for its agent's negligence but for its own negligence. Therefore, summary judgment was wholly improper under the circumstances of this case. *Groseth Int'l, Inc. v. Tenneco, Inc.,* 410 N.W.2d 159 (S.D.1987).

The majority attempts to overly simplify this issue by stating that the issue is "Whether Transamerica had a duty to notify PGS of its intent not to renew PGS's insurance or to procure replacement insurance." The opinion then cites several authorities to resolve this issue. However, these cases deal with situations where there is a policy for a definite term and the term expires or the premium becomes due. Under such circumstances an insurer is not under an obligation to notify the insured. In contrast, this case involves the insured's inability to renew his insurance with the insurer because the insurer cancelled its agency contract with whom insured dealt. Under these circumstances an insurer has a duty to notify its own insured of the cancellation. Transamerica recognized and assumed this duty with instructions to the agency as follows:

Please make arrangements to place this coverage in another market on expiration date 10–1–83 since your agency is no longer representing our company.

Please also provide us with written confirmation of the replacement.

The majority's reliance, as indicated above, on the fact that Transamerica terminated the agency relationship is wholly misplaced. The majority states:

Had the claim occurred *while* the policy was in force, but not reported until after the expiration of the policy and termination of the agency agreement, the result *may have* been different. (emphasis added).

Obviously, had the claim occurred while the policy was in force there would be no question as to coverage.*

The majority opinion downplays the confirmation of Transamerica's duty to its insured by stating:

Transamerica simply asked for confirmation of Agency's placement of PGS's coverage with another carrier. It was mere-

---

* The majority also mistakenly relies on an amendment to SDCL 58–1–14 to support the argument that Transamerica was under no legal duty to notify PGS of its intent not to renew PGS' policy prior to its passage. SDCL 58–1–14 states in part:

Notice of refusal to renew an insurance policy ... is not effective unless mailed or delivered by the insurer to the named insured at least thirty days before the effective renewal date. The policy provisions control if the policy provides for a notice of refusal to renew that exceeds thirty days....

This statute does not support the majority's position. In fact, it detracts from it. The statute affirms a duty on the part of the insurance company to give notice of refusal to renew. It goes even further and makes ineffective any notice mailed or delivered by the insurer to the named insured less than thirty days before the effective renewal date. Neither the statute, nor the amendment, detracts from Transamerica's duty to notify the insured of nonrenewal where that nonrenewal resulted from Transamerica's cancellation of its agent Dakota Insurance Agency.

ly a reminder to Agency to fulfill Agency's obligation to Agency's customer.

Why should Transamerica concern itself with Agency's obligations unless it recognized it also owed an obligation to its insured, Peterson.

Transamerica argues that the "true cause of Peterson's loss was his failure to obtain insurance after his policy expired." The true cause of Peterson's loss was the failure of Transamerica to notify its insured, Peterson, after Transamerica's agent, Dakota Insurance Agency, had failed to comply with Transamerica's earlier written instructions and procure replacement insurance for the insured. Transamerica never received the written confirmation it sought from its agent, and therefore, Transamerica knew or should have known that its insured, Peterson, would have no idea that its insurance coverage would not continue or be automatically renewed as before. "Negligence can be premised equally upon an omission to act as upon the commission of an act." *Koeniguer v. Eckrich*, 422 N.W.2d 600, 602 (S.D. 1988). This failure to act by Transamerica is the very basis of the negligence action alleged by Peterson. *Zukaitis*, held an insurer liable to the insured where the insured had no notice that the agency relationship had been terminated, and continued to act and rely upon the knowledge he had of such agency relationship.