Fred OLSON, Jr., Plaintiff
and Appellant,

v.

TRI–COUNTY STATE BANK,
Defendant and Appellee.

Nos. 16702, 16724.

Supreme Court of South Dakota.

Considered on Briefs Feb. 14, 1990.

Decided May 9, 1990.

Wally Eklund of Johnson, Eklund & Davis, Gregory, for plaintiff and appellant.

Steven W. Sanford of Cadwell, Sanford & Deibert, Sioux Falls, for defendant and appellee.

SABERS, Justice.

Fred Olson, Jr. appeals two orders for partial summary judgment in favor of Tri-County State Bank (Bank). By notice of review, the Bank appeals a jury award of punitive damages to Olson.

### Facts

Olson was a long-time customer of the Bank and financed most of his ranching operation there. Beginning around 1983, Olson dealt almost exclusively with William Pulse, the manager of the Kimball branch of the Bank. On April 5, 1984, Pulse asked Olson to sign a note with the proceeds going to Pulse. Olson agreed and signed a blank note that Pulse later filled out for $16,200. Sometime in 1985, Pulse falsely told Olson that he had paid the note. In fact, Pulse had included the note in a re-newal note of Olson's.

In February of 1985, Olson called Pulse and said he would like to write a check at the Bank for cash. Pulse advised Olson that he was overdrawn at the Bank. To cover the deficit and provide the cash, Pulse mailed two blank notes to Olson for him to sign and mail back to the Bank.

When Pulse received the signed blank notes, he completed one for $64,500, but only deposited $10,000 in Olson's account, keeping the rest for himself. In 1986, without the knowledge of Olson, Pulse completed a second signed blank note for $79,600 and again kept the money. These notes were later included in renewal notes executed by Olson, whose indebtedness to the Bank eventually exceeded $900,000.

Sometime in August of 1987, Pulse's mis-appropriation of funds from the Bank was discovered. Around that same time, the Bank refused to lend more money to Olson because his loan balance was in excess of the statutory limit prescribed by SDCL 51–24–2.[1] As a result, Olson commenced this action, seeking damages from the Bank for bad faith, conversion, and embezzlement. The Bank counterclaimed, asserting that Olson was indebted to the Bank on several promissory notes.

The Bank moved for partial summary judgment and the trial court granted the motion, dismissing Olson's case except for his claim to a credit of $150,300,[2] plus accrued interest, on the unpaid balance of his notes. Shortly before trial the Bank moved again for partial summary judg-ment, and, again, the motion was granted by the trial court, awarding the Bank judg-ment on all its counterclaims except for those involving the two blank notes signed by Olson and returned to Pulse through the mail. At trial, the jury verdict discharged Olson from liability for the two blank notes and awarded him $35,022 for interest paid on those notes and $25,000 as punitive dam-ages.

Olson appeals the summary judgment or-ders, asserting two errors. First, he claims he should not have been found liable as a matter of law on the first note for $16,200.

---

1. SDCL 51–24–2 provides:
   Except as otherwise provided in this title, no bank may loan to any corporation, partner-ship, or individual, an amount greater than the sum of:
   (1) Twenty percent of its capital stock and surplus; and
   (2) Ten percent of its undivided profit.
   Such limit shall be determined for each calen-dar quarter on the basis of the bank's quarter-ly report of condition for the immediately previous calendar quarter.

2. This sum represents the three notes specifical-ly referred to above: the first one for $16,200 for Pulse, and the second and third notes signed in blank, one for $64,500 (less $10,000) and one for $79,600.

Second, he claims the trial court erred in dismissing his cause of action against the Bank for its bad faith refusal to lend him additional funds. By notice of review, the Bank appeals the award of punitive damages to Olson. We affirm in all respects.

### 1. Liability for $16,200 note.

■ Olson claims the trial court erred in imposing liability upon him as a matter of law for the $16,200 note when he did not receive any of the money and the note was fraudulently included in a renewal note. We affirm summary judgment "only if there are no genuine issues of material fact and the legal questions have been correctly decided." Bego v. Gordon, 407 N.W.2d 801, 804 (S.D.1987).

SDCL 57A-3-413 imposes liability upon the maker of a negotiable instrument to pay the instrument according to its terms. When Olson signed the note he unconditionally promised to pay that note. He knew he was signing a note and he knew that Pulse was going to receive the money. In effect, he extended his credit to Pulse. As a result, Olson was liable to the Bank for the note.

■ Even if the note was fraudulently included in a renewal note, as Olson alleges, that is insufficient to give rise to a cause of action because it is not accompanied by any proof of damage. See Community Bank v. Wright, 221 Va. 172, 267 S.E.2d 158 (1980). Olson could not be damaged by the fraud because "there is no damage where the position of the complaining party is no worse than it would be had the alleged fraud not been committed." Id. 267 S.E.2d at 160 (quoting Cooper v. Wesco Builders, Inc., 76 Idaho 278, 283, 281 P.2d 669, 672 (1955)); see also Karlstad State Bank v. Fritsche, 392 N.W.2d 615 (Minn. Ct.App.1986) (Fraudulently induced personal guarantee caused no harm when liability already existed under prior guarantee). Olson is no worse off than if the alleged fraud had not been committed because he would still be liable for the initial note.

Olson claims he was damaged because he says he would not have signed the renewal notes if he had known that Pulse had not paid the initial note. However, Olson offers no evidence to quantify the damage he allegedly incurred because he signed the renewal note, and such highly speculative damages are insufficient to sustain a fraud action. See Kane v. Schnitzler, 376 N.W.2d 337 (S.D.1985). As a result, any dispute about Pulse's conduct does not rise to the level of a material fact as to Olson's liability and partial summary judgment was appropriate.

### 2. Bad faith refusal to extend additional credit.

■ Olson claims the trial court erred in dismissing his claim that the Bank was liable for its bad faith refusal to extend additional credit to Olson. He claims the Bank is equitably estopped from raising the statutory loan limitation of SDCL 51-24-2 because a portion of his outstanding loans were amounts misappropriated by Pulse. However, the trial court determined that "[a]t all times in 1986 and 1987, the unpaid principal amount of loans to Olson always exceeded the bank's lending limit by more than" the amount misappropriated by Pulse. Consequently, the Bank could not legally extend further credit to Olson even if the misappropriated funds were disregarded.

■ The Bank cannot be charged with bad faith when they refuse to do something they may not legally do. Furthermore, authority to perform an illegal act cannot be supplied by estoppel. Dupree v. Moore, 227 N.C. 626, 44 S.E.2d 37 (1947).

### 3. Punitive damages.

The Bank claims it should not be liable for punitive damages for two reasons. First, it claims that compensatory damages are a prerequisite to imposing punitive damages and none were awarded in this case. Second, the Bank claims punitive damages were inappropriate because it is not vicariously liable for the alleged fraud of Pulse and consequently cannot be liable for punitive damages.[3]

**3.** Because an employer is vicariously liable for    the injury caused by the fraudulent conduct of

■ Compensatory damages are "damages awarded to a person as compensation, indemnity or restitution for harm sustained by him." *Restatement (Second) of Torts* § 903 (1977). The jury verdict awarded $35,022 to Olson to recover from the Bank interest on the discharged notes. That award constitutes restitution for harm sustained by Olson and qualifies as compensatory damages. Olson was harmed because he paid interest he was not liable for and the jury award restored that money to him. Therefore, the Bank's first attack on the punitive damages fails because Olson's damages were compensatory.

■ The Bank claims it is not vicariously liable for the alleged fraud of Pulse because Pulse was acting solely for his own benefit when he fraudulently completed the notes. A principal is not automatically discharged from liability for fraud committed by an agent simply because the agent acts solely to benefit himself. *Leafgreen v. American Family Mut. Ins. Co.*, 393 N.W.2d 275 (S.D.1986). Whether a principal will be held liable for the conduct of an agent is determined by the nexus between the agent's employment and the activity which actually caused the injury. *Id.* Liability will be imposed upon the principal when the nexus is sufficient to make the resulting harm foreseeable. *Id.* In other words, if the agent's employment puts him in a position where his harmful conduct would not be "so unusual or startling that it would be unfair to include the loss caused by the injury among the costs of the employer's business," then the principal is liable for the injury. *Id.* at 280–1.

■ The facts of this case warrant imposing vicarious liability upon the Bank. It

is far from unusual or startling that a bank employee would use his position to misappropriate money. In fact, banks normally bond their employees to protect against such occurrences. As a result, it is not unfair to hold the Bank liable in this situation, and the trial court did not err in doing so.

All the Justices concur.

an employee does not mean the employer is also vicariously liable for punitive damages. Although the Bank does not specifically address this issue, it is important to address it in order to support liability for punitive damages in this case. The *Restatement (Second) of Agency* § 217 C (1958), specifies when a principal may be held liable for punitive damages:

Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if:

  (a) the principal authorized the doing and the manner of the act, or

  (b) the agent was unfit and the principal was reckless in employing him, or

  (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or

  (d) the principal or a managerial agent of the principal ratified or approved the act. As vice president and branch manager, Pulse was employed in a managerial capacity and loan transactions were within the scope of his employment. Therefore, punitive damages may be awarded against the Bank for any wrongful conduct of Pulse.