Floyd McKINNEY and Una McKinney,
Plaintiffs and Appellants,

v.

PIONEER LIFE INSURANCE COMPA-
NY, Defendant and Appellee.

No. 17020.

Supreme Court of South Dakota.

Considered on Briefs Oct. 22, 1990.

Decided Jan. 23, 1991.

Brian W. Jones of Heidepriem, Widmay-
er, Zell & Jones, Miller, for plaintiffs and
appellants.

Robert B. Anderson of May, Adam,
Gerdes & Thompson, Pierre, for defendant
and appellee.

MILLER, Chief Justice.

This is an appeal from a summary judg-
ment in favor of Pioneer Life Insurance
Company (Pioneer) in an action against it
for policy proceeds, "emotional strain" and
punitive damages. We reverse.

### FACTS

Floyd and Una McKinney of Miller,
South Dakota, brought this action against
Pioneer seeking, among other things, mon-
ey which they claimed was owed to them
under a "long-term-care" insurance policy.

Pioneer, which apparently has never answered the complaint,[1] moved for summary judgment on the basis of the preexisting condition limitation in the policy. The trial court granted summary judgment and McKinneys' motion to reconsider the same was later denied. This appeal followed.

Floyd had been a patient of Dr. James E. Monfore for over twenty years. He had enjoyed fairly good health over those years, excepting minor back troubles. Between June, 1982, and February, 1987, Floyd began to suffer episodes of gross confusion which culminated in a diagnosis of Alzheimer's disease. He was treated with various drugs. On February 20, 1987, Floyd was admitted to the hospital and hospital records note that he suffered from Alzheimer's disease (this is the first time doctors' records definitely make that diagnosis).

On March 1, 1987, Floyd was admitted to nursing home care at the hospital. Dr. Monfore testified that during the course of seeing Floyd as a patient, his wife was always with him. Although Dr. Monfore discussed her husband's condition with Una many times, he did not know if he had ever actually told her that Floyd was suffering from Alzheimer's disease.

On that same day, Michael R. Johnson, an agent of Pioneer, sold a "long-term-care" insurance policy to Floyd and Una. Johnson had traveled that Sunday afternoon to Miller, South Dakota, from his home in Sioux Falls, after receiving a phone call from Una asking him to come to Miller to write a "nursing home" policy for Floyd. That day, the application for insurance was written and subsequently signed by Una in her home. Floyd, who was in the hospital, was not present. Una signed his name for him. Johnson, who totally completed the application form, was aware that Floyd was hospitalized.[2] Johnson, who had previously sold health insurance to McKinneys, was generally familiar with

Floyd's condition. On prior occasions, he and Una had discussed the fact that Una believed Floyd had Alzheimer's disease.

Johnson accepted Una's check for the premium and submitted the application to Pioneer. The policy which Pioneer ultimately issued contained a preexisting condition limitation.

Una ultimately filed a claim with Pioneer for expenses which arose from Floyd's long-term care in the nursing home. Subsequently, Pioneer notified McKinneys that the claim was denied based on the preexisting condition limitation contained in the policy. Pioneer rescinded the policy and ultimately sent a check to the McKinneys representing the amount of the initial premium of $1,316.00. It has not been cashed.

McKinneys brought this suit. In their complaint, they alleged breach of contract, fraudulent inducement and bad faith refusal to pay insurance proceeds. They sought damages as follows: $15,853.50 for policy benefits due; $50,000 for "severe emotional strain"; and $100,000 in punitive damages. Eventually, Pioneer filed a motion for summary judgment claiming that it was entitled to judgment as a matter of law because "there is no genuine issue as to any material fact relevant to the preexisting condition defense advanced" by it. The trial court granted summary judgment for Pioneer, concentrating principally on the preexisting condition exclusion, but making a brief comment that the evidence does not support McKinneys' allegations of fraud. This appeal followed.

## STANDARD OF REVIEW

 It is well established that summary judgment shall be granted where the pleadings, depositions, admissions, exhibits, and supporting affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as

---

1. There is no answer in the file. None is referred to in any of the documents relating to the motion for summary judgment. The trial court's memorandum decision refers only to the "pleading" and the only pleading in the file is the complaint.

2. The insurance application, completed by Johnson, merely notes that on February 19, 1987, the applicant (Floyd) had a sickness or injury, the nature of which was "unknown," and that he had been in the hospital or nursing home since February 20, 1987.

a matter of law. *Aetna Life Ins. Co. v. McElvain*, 363 N.W.2d 186 (S.D.1985). To surmise that a party will not prevail at trial is not a sufficient basis on which to grant summary judgment on issues which are not shown to be sham, frivolous, or so unsubstantial that it is obvious that it would be futile to try them. *Trapp v. Madera Pac., Inc.*, 390 N.W.2d 558 (S.D.1986).

## DECISION

 Various issues have been presented to us in this appeal, *i.e.*, it has been asserted that the policy provisions (specifically portions of the preexisting condition exclusion) are ambiguous. We conclude those issues are irrelevant and collateral to the central issue, namely Pioneer's responsibility for Agent Johnson's representations, and therefore dispose of the appeal on that basis.

Here, the complaint alleges [3] that McKinneys were fraudulently induced to purchase the insurance contract through a scheme executed by Agent Johnson whereby Johnson filled out the application for the McKinneys, including answers which he knew were untrue and were designed to lead to the approval of the application by Pioneer. The complaint further alleges that McKinneys were unaware that Johnson had written false answers to questions on the application and were unaware that later, given the correct answers to those questions, Pioneer would attempt to rescind the policy. McKinneys further allege that Pioneer, having failed to reasonably investigate the application for insurance, is responsible as a principal for Johnson's actions. Furthermore, they assert that Pioneer is estopped to deny coverage or to rescind the policy based on inaccuracies within the application.

Interestingly, Una testified that she had previously purchased a different health insurance policy from Johnson through Pio-

neer. Pioneer terminated the policy for nonpayment of premium. (She had previously paid the premium to Johnson, but he did not remit it to Pioneer.) Una testified that she then contacted Pioneer, sending them a copy of the check. Pioneer later called her, informing her that they had "straightened it out" by charging Johnson's account for the amount of the premium.

Pioneer fired Johnson because he evidently had a problem selling insurance policies due to his frequent "dope" smoking. Johnson's supervisor was aware of his drug and financial problems because Johnson told him about it on several occasions.[4]

In response to the motion for summary judgment, Una filed an affidavit alleging that she and Johnson had discussed some details of the insurance policy she believed she had purchased. Included in those discussions were details described to her by Johnson as a "six-month waiting period." Una claims that Johnson explained them to her to mean that she could not submit a claim to Pioneer for benefits from Floyd's confinement in the nursing home until six months after the date the policy was issued. That, she explains, is why she did not file a claim for benefits under the policy until September of 1987, six months after Floyd had been admitted to the hospital/nursing home. Una reiterated that testimony at her deposition. (In his deposition, Johnson denied many of Una's assertions.)

 Generally, a principal may be held liable for the fraud and deceit of his agent acting within the scope of his actual or apparent authority, even though the principal was unaware of or received no benefit from his agent's conduct. *Dahl v. Sittner*, 429 N.W.2d 458, 462 (S.D.1988) (citing SDCL 59–6–1); *see also Leafgreen v. American Family Mut. Ins. Co.*, 393 N.W.2d 275 (S.D.1986); *see also* SDCL 58–30–1; 59–6–2; 59–6–3; 59–6–9 and 59–6–10.

**3.** As noted in footnote one, no answer to the complaint has been filed.

**4.** It should be noted that Johnson is presently an inmate in the South Dakota State Penitentiary having pleaded guilty to a charge of grand theft. He received five years' imprisonment. Johnson had gone to a nursing home to visit a client to whom he had sold several hospital policies. The client gave Johnson a check for the premium on an insurance policy, although Johnson was no longer an agent with that company. Johnson then cashed the check and pocketed the proceeds.

Furthermore, whether or not an agent is acting within the scope of his apparent authority is to be determined as a question of fact from all the circumstances of the transaction and the nature of the principal's business. *Dahl,* 429 N.W.2d at 462.

In *Moore v. Kluthe & Lane Ins. Agency, Inc.,* 89 S.D. 419, 234 N.W.2d 260 (1975), we noted that a duty may exist between insurance agents and an insured concerning representations made about the intricacies of insurance contracts. Here, the agent, according to Una, made affirmative representations concerning the provisions of the policy.

In *Leafgreen, supra,*[5] we stated:

We think it fairly stated that a principal is liable for tortious harm caused by an [insurance] agent where a nexus sufficient to make the harm foreseeable exists between the agent's employment and the activity which actually caused the injury; foreseeable is used in the sense that the employee's conduct must not be so unusual or startling that it would be unfair to include the loss caused by the injury among the costs of the employer's business.

393 N.W.2d at 280–81. In applying the foregoing test, we noted four factors. The first factor was that in *Leafgreen* the insurance company was defrauded by its agent as much as the victim was. That, under Una's version of the facts, is also true in this case. Secondly, in *Leafgreen,* the agent's entrance into the home was incidental to his employment with the insurance company and the tortious act was not. Here, the alleged tortious act was within the agent's employment with Pioneer. Thirdly, we noted in *Leafgreen* that there the agent became aware of information that led to the tort through his friendship with the victims, not because of his status as an insurance agent. That is not the case here. It was through Johnson's status as an agent that he obtained the information which Una claims was falsely related in the application. Fourth, in *Leafgreen,* we determined that extending liability under the facts present there would be prescribing a form of strict liability upon employers under the doctrine of respondeat superior. Here, where the employer arguably knows or should have known of the fraudulent acts and propensities of its agent, there would be no strict liability created.

 Questions of fraud and deceit are generally questions of fact and, as such, are to be determined by the jury; likewise, whether a party relied on the claimed fraud or to its detriment is a question of fact for the jury. *Laber v. Koch,* 383 N.W.2d 490 (S.D.1986).

Here, the jury could determine, considering Johnson's drug usage, his dire need for money, and his alleged theft of the McKinneys' health insurance premium on a prior occasion, that he had, in fact, made the representations to McKinneys; that Pioneer could or should have anticipated such conduct because of their awareness of his problems; and that as a result Pioneer could be held liable. Thus, we hold that a genuine issue of material fact exists which precludes summary judgment in this case.

Therefore, the order of the circuit court granting summary judgment is reversed.

WUEST, HENDERSON and SABERS, JJ., and MORGAN, J. (Retired), concur.

HERTZ, Circuit Judge, acting as a Supreme Court Justice, did not participate.

---

5. In *Leafgreen,* we relied on the Restatement (Second) of Agency § 261, which provides:

A principal who puts a servant or other agent in a position which enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud.

Comment a to § 261 states:

The principal is subject to liability under the rule stated in this Section although he is entirely innocent, has received no benefit from the transaction, and, as stated in § 262, although the agent acted solely for his own purposes. Liability is based upon the fact that the agent's position facilitates the consummation of the fraud, in that from the point of view of the third person the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business confided to him.