_____

No. 96-1470
_____

Lesa M. Primeaux, formerly      *
known as Lesa M. Lamont,        *
formerly known as Lisa M.       *
Bad Wound,                      *
                                *
        Plaintiff-Appellant,    *
                                * Appeal from the United States
    v.                          * District Court for the
                                * District of South Dakota.
United States of America,       *
                                *
        Defendant-Appellee.     *

_____

        Submitted:  October 21, 1996

          Filed:  December 26, 1996
_____

Before WOLLMAN, LAY, and BRIGHT, Circuit Judges.

_____

LAY, Circuit Judge.


                            I.


    In this appeal, Lesa Primeaux seeks damages under the Federal
Tort Claims Act, 28 U.S.C. §§ 1346(a), 2671 et seq. (FTCA), arising
from a sexual assault by Bureau of Indian Affairs (BIA) police
officer Kenneth Michael Scott.  On November 9, 1991, at
approximately 1:00 a.m., Primeaux, then twenty-one years old, was
driving on a South Dakota highway.  While she was trying to turn
her car around, it became stuck in a snowbank.  After an
unsuccessful attempt to free her vehicle, she began walking toward
the nearest town of Martin, South Dakota.

    Scott, driving a white government vehicle with a police light
bar on top, came upon Primeaux's car and stopped to see if anyone

needed assistance.  Finding no one, he drove toward Martin.  He then saw Primeaux walking along the road, and stopped to ask her whether she wanted a ride.  She accepted and got in the front seat of the car.  After driving a very short distance, Scott pulled off the highway, ostensibly to go to the bathroom.  The district court made the following factual findings as to the subsequent events: Scott asked Primeaux to exit the vehicle, and told her to do what he said.  He then grabbed her, unzipped her jeans, pulled her by the hair, and committed an act of sexual penetration.  He also attempted oral intercourse with Primeaux.[1]

At the time of the assault, Scott was wearing clothing Primeaux reasonably could have mistaken for a police uniform. Scott's government car had no markings on either side, but had a police light bar on the roof, a police radio inside, and government license plates.  Scott was traveling back from Arizona, where he had attended a training session that was paid for by the government, as were his travel expenses.  In addition, he did not use leave time to attend the session but was on "travel status," continuing to draw his BIA salary.

Primeaux testified she was fearful Scott would arrest her for drinking and driving, though she acknowledged he did not threaten to arrest her or ask her if she had been drinking.  Scott was a police officer on the Rosebud reservation in South Dakota.  Both Primeaux's car mishap and the assault occurred outside the reservation.  Scott testified he merely "stopped to help an individual"; he "wasn't in uniform or in duty capacity."  Scott was unarmed.

---

[1]At trial, it was the government's position that the act was consensual, while Scott testified Primeaux was the aggressor in the encounter.  The district court made a credibility determination and found that under South Dakota law, Scott had sexually assaulted Primeaux.  That finding is not appealed.

The district court found that a sexual assault occurred under South Dakota law, but that Scott was not acting within the scope of his employment as a BIA officer.  It therefore issued judgment in favor of the United States.  Since the government does not cross-appeal on the finding of sexual assault, the sole issue before us is whether, under South Dakota law,[2] Scott's actions were within the scope of his BIA employment.

## II.

Primeaux urges us to review the district court's application of South Dakota scope of employment law de novo.  South Dakota law is clear, however, that an application of this test is a question of fact.  McKinney v. Pioneer Life Ins. Co., 465 N.W.2d 192, 195 (S.D. 1991).  This court reviews questions of fact under a clearly erroneous standard, and questions of law de novo.  See Brazzel v. United States, 788 F.2d 1352, 1355 (8th Cir. 1986) ("Although the choice of the appropriate rule ... is a matter of law, a district court's findings on the application of that rule are findings of fact and will not be disturbed unless clearly erroneous.").

## III.

The district court, pursuant to oral findings of fact and conclusions of law given at trial, relied primarily upon three distinct points of law in determining the scope of employment test to be used in this case.  First, it recited the factors listed in Restatement (Second) of Agency § 229 and adopted by the South Dakota Supreme Court in Deuchar v. Foland Ranch, Inc., 410 N.W.2d

---

[2]Neither party disputes that in an action brought under the FTCA, whether a government employee's act is within the scope of employment is a determination governed by state law.  Forrest City Mach. Works, Inc. v. United States, 953 F.2d 1086, 1088 n.5 (8th Cir. 1992).

177 (S.D. 1987).[3]

Second, it discussed the foreseeability test set out in

---

[3]The Deuchar court quoted from § 229 in relevant part:

(1) To be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized.

(2) In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:

(a) whether or not the act is one commonly done by such servants;

(b) the time, place and purpose of the act;

(c) the previous relations between the master and the servant;

(d) the extent to which the business of the master is apportioned between different servants;

(e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;

(f) whether or not the master has reason to expect that such an act will be done;

(g) the similarity in quality of the act done to the act authorized;

(h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;

(i) the extent of departure from the normal method of accomplishing an authorized result; and

(j) whether or not the act is seriously criminal.

Deuchar, 410 N.W.2d at 180 n.2 (quoting Restatement (Second) of Agency § 229).

<u>Leafgreen v. American Family Mut. Ins. Co.</u>, 393 N.W.2d 275 (S.D. 1986). The rule governing scope of employment, as put forth in <u>Leafgreen</u>, is that "a principal is liable for tortious harm caused by an agent where a nexus sufficient to make the harm foreseeable exists between the agent's employment and the activity which actually caused the injury." <u>Id.</u> at 280. Foreseeability is governed by the following standard: "[T]he employee's conduct must not be so unusual or startling that it would be unfair to include the loss caused by the injury among the costs of the employer's business." <u>Id.</u> at 280-81. The district court here repeated both of these principles. Trial Tr. at 254-55.

Third, the district court recognized the importance of <u>Red Elk v. United States</u>, 62 F.3d 1102 (8th Cir. 1995), as the closest case factually to the case at bar applying South Dakota law to reach its decision. In <u>Red Elk</u>, this court affirmed an assessment of liability against the government for damages resulting from the rape of a thirteen-year-old girl by an on-duty tribal police officer. <u>Id.</u> at 1103-04, 1108. After a thorough analysis of South Dakota scope of employment cases, this court determined first that "'[f]oreseeability' is central to the analysis under the South Dakota rule," and second that it was foreseeable this police officer would violate the position of trust his employment provided and sexually assault the victim. <u>Id.</u> at 1107. The district court distinguished <u>Red Elk</u> by noting that under the facts presented here, Scott "was not on duty for . . . enforcement purposes," was not armed, was outside of his jurisdiction, and was not picking up Primeaux for any violation of law. Trial Tr. at 259. The court thus concluded that Scott was not acting within the scope of his employment for vicarious liability purposes. <u>Id.</u> at 259.

<u>Red Elk</u>, <u>Leafgreen</u>, and <u>Deuchar</u>, in addition to other cases applying South Dakota law, all seem to be in agreement that foreseeability is the linchpin of the South Dakota scope of

employment test.[4]

                              IV.


     Our review of South Dakota respondeat superior law convinces
us that the district court did not apply the South Dakota test in
its entirety.  By failing to recognize principles of apparent
authority under South Dakota law as applied in cases such as the
one at bar, the court may have been misled in finding that Scott's
criminal assault was not foreseeable as being within the scope of
his employment.  The district court appears to hold that since
Scott was outside of his jurisdiction not serving in a law
enforcement capacity, the government cannot be held liable under
vicarious liability principles.  The difficulty we have with the
district court's determination is that it fails to take into
account the doctrine of apparent authority inherent in respondeat
superior law.  Here, the officer was on limited duty driving a
police car equipped with a police radio and government plates, and
was wearing clothing lending an appearance of a police officer in
uniform.  The victim was concerned she would be arrested.  The BIA
has certainly provided the officer with the cloak of authority so
that a third person such as Primeaux could reasonably assume the
officer was carrying out his official duties.

_____

     [4]See, e.g., Red Elk, 62 F.3d at 1107 ("'Foreseeability' is
central to the analysis under the South Dakota rule stated in
Leafgreen."); Davis v. Merrill Lynch, Pierce, Fenner & Smith, 906
F.2d 1206, 1222 n.19 (8th Cir. 1990) (quoting South Dakota cases
holding that "liability will be imposed upon the principal when
the nexus is sufficient to make the resulting harm foreseeable"
and then applying this principle); McKinney v. Pioneer Life Ins.
Co., 465 N.W.2d 192, 195 (S.D. 1991) (articulating and applying
the foreseeability test); Olson v. Tri-County State Bank, 456
N.W.2d 132, 135(S.D. 1990) (same); Deuchar, 410 N.W.2d at 181
("[T]his Court has adopted the foreseeability test for
determining when a servant's acts are within the scope of
employment."); Leafgreen, 393 N.W.2d at 280 (adopting the
reasoning of a California Court of Appeals which articulated and
refined the foreseeability test).

In _Leafgreen_, the South Dakota Supreme Court applied Restatement (Second) of Agency § 261, which discusses apparent authority as it relates to fraud. _Leafgreen_, 393 N.W.2d at 277. The analogous section of the Restatement relating to tortious wrongdoing reads as follows:

> (2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:
>
> . . .
>
>> (d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.

Restatement (Second) of Agency § 219(2)(d). Section 265(1) of the Restatement gives the general rule for apparent authority, which is that "[a] master or other principal is subject to liability for torts which result from reliance upon, or belief in, statements or other conduct within an agent's apparent authority." Restatement (Second) of Agency § 265(1). South Dakota cases consistently articulate respondeat superior law as including principles of _apparent_ authority. See _Leafgreen_, 393 N.W.2d at 277 ("Under general rules of agency law, a principal may be held liable for fraud and deceit committed by an agent within his apparent authority, even though the agent acts solely to benefit himself."); _McKinney v. Pioneer Life Ins. Co._, 465 N.W.2d 192, 194 (S.D. 1991) ("Generally, a principal may be held liable for the fraud and deceit of his agent acting within the scope of his actual or apparent authority, even though the principal was unaware of or received no benefit from his agent's conduct.") (citing _Dahl v. Sittner_, 429 N.W.2d 458, 462 (S.D. 1988)); see also _State v. Hy-Vee Food Stores, Inc._, 533 N.W.2d 147, 149 (S.D. 1995) (discussing vicarious criminal liability and noting, "Well settled is the basic principle that criminal liability for certain offenses may be imputed to corporate defendants for the unlawful acts of its

employees, provided that the conduct is within the scope of the employee's authority whether actual or apparent"); <u>Siemonsma v. David Mfg. Co.</u>, 434 N.W.2d 70, 73 (S.D. 1988) (relying on Restatement (Second) of Agency § 265(1)); <u>cf.</u> <u>Baldwin v. National College</u>, 537 N.W.2d 14, 18 (S.D. 1995) (discussing ostensible agency generally); <u>Federal Land Bank of Omaha v. Sullivan</u>, 430 N.W.2d 700, 701 (S.D. 1988) (same). We find the Restatement to be consistent with South Dakota law, and where, as here, a case is one of first impression, South Dakota is guided in part by the Restatement. <u>Leafgreen</u>, 393 N.W.2d at 277.[5] Therefore, we read South Dakota law to hold the employer vicariously liable not only for foreseeable tortious wrongs committed pursuant to the employee's actual authority, but also for those committed when <u>apparent</u> authority of the employee "<u>puts him in a position</u> where his harmful conduct would not be 'so unusual or startling that it would be unfair to include the loss caused by the injury among the costs of the employer's business.'" <u>Olson v. Tri-County State Bank</u>, 456 N.W.2d 132, 135 (S.D. 1990) (quoting <u>Leafgreen</u>, 393 N.W.2d at 280-81) (emphasis added). Foreseeability necessarily includes not only instances of use or abuse of actual authority, but also of use or abuse of apparent authority. Under these governing principles, the district court's finding that Scott's assault was not foreseeable because he was not acting within the scope of his actual authority--that is, exercising law enforcement duties--was too narrow.

In <u>Red Elk</u>, this court noted that while it is unfortunate and uncommon, sexual misconduct by an officer is in some circumstances

---

[5]As this court pointed out in <u>Davis</u>, "<u>Leafgreen</u> does not mandate that Restatement of Agency rules be adopted where the Restatement is at variance with the related South Dakota precedent." 906 F.2d at 1222 n.18. Where, however, as here, the Restatement is in accordance with South Dakota law, we believe its principles guide the South Dakota courts.

reasonably foreseeable.[6]  62 F.3d at 1107.  It is no less foreseeable that such an abuse of authority could occur while the officer is not technically on duty, but rather possesses the apparent authority sufficient to cause a person to rely on or fear that authority and succumb to sexual advances.  Cases holding employers liable for sexual assaults or excessive use of force by police officers reason that such conduct is foreseeable because of the unique position of trust held by such officers. See Mary M. v. City of Los Angeles, 814 P.2d 1341, 1352 (Cal. 1991) (holding a police officer liable for a sexual assault because he took "advantage of his authority and control as a law enforcement officer"); White v. County of Orange, 166 Cal. App.3d 566, 571, 212 Cal. Rptr. 493, 496 (Cal. Ct. App. 1985) (holding that a police officer could have acted within the scope of his employment when he stopped a motorist and sexually assaulted her, and noting that "the police officer carries the authority of law with him into the community . . . [and] the officer's method of dealing with this authority is certainly incidental to his duties"); Applewhite v. City of Baton Rouge, 380 So.2d 119, 122 (La. Ct. App. 1979) (finding employer liability for a police officer's sexual abuse of a woman in his custody, and noting "where it is found that a law enforcement officer has abused the 'apparent authority' given such persons to act in the public interest, their employers have been required to respond in damages").  It is equally likely that this trust is relied upon when officers appear to be exercising their authority, especially because of the 'on-call' nature of their employment.  See Osborne v. Lyles, 587 N.E.2d 825, 831 (Ohio 1992) (reversing summary judgment for the city in a case of excessive force used by an off-duty police officer at an accident scene in part because the officer was to "be considered on duty at all

---

[6]The Red Elk court also noted that "[c]ases like this stigmatize respected police officers who in rendering vital public work surely outnumber the errant officers."  62 F.3d at 1107.  That sentiment is worth repeating here.

-9-

times, for purposes of discipline"); Daigle v. City of Portsmouth, 534 A.2d 689, 699 (N.H. 1987) (holding the city liable for an off-duty police officer's assault because the employment-related activities of employees who have an "obligation, or at least the option, to perform official duties whenever the need may arise" are considered within the scope of their employment).

Here, it is possible that Scott was aided in his assault of Primeaux by the existence of the agency relation. See Restatement (Second) of Agency § 219(2)(d). If Scott accomplished his objective by using his status as a police officer, and if Primeaux relied on his position in succumbing to his advances, then his conduct may fall within the doctrine of apparent authority. See Restatement (Second) of Agency § 265. The district court failed to make a finding as to this possibility or recognize apparent authority as a part of South Dakota respondeat superior law. Accordingly, we remand to the district court for reconsideration of its factual findings with application of South Dakota law relating to apparent authority.

WOLLMAN, Circuit Judge, dissenting.

The district court found that Ms. Primeaux submitted to Scott's demands out of fear and intimidation arising from Scott's apparent position of authority as a police officer and as one who appeared to have the power to carry out his commands. The district court's finding that it was not foreseeable that Scott would use his status as a police officer to commit the acts that he did at the time and place that he did includes, in my view at least, the implicit finding that Scott's exercise of apparent authority in the circumstances of this case could not have been within the scope of his employment. What more the district court could and should have found with respect to Scott's position of apparent authority, I do not know. However reprehensible Scott's actions, I do not believe that the district court's findings are clearly erroneous, and thus

-10-

I would affirm the judgment.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.