746 So.2d 179 (1999)
John DOE and Jane Doe, Individually and on Behalf of the Minor Child, E.C.
v.
LOUISIANA MUNICIPAL ASSOCIATION; The City of Lutcher; The Lutcher Police Department; and Terry Smith, Lavern Smith and Their Undisclosed Homeowners' Insurance Company.
No. 99-CA-539.
Court of Appeal of Louisiana, Fifth Circuit.
October 26, 1999.
*180 Thomas S. Maloney, Baton Rouge, Louisiana, Attorney for Plaintiffs-Appellants, Ameera Cooper, et al.
John F. Jakuback, Baton Rouge, Louisiana, Attorney for Defendants-Appellees, The City of Lutcher and the Louisiana Municipal Association.
Court composed of Judges EDWARD A. DUFRESNE, Jr., JAMES L. CANNELLA and SUSAN M. CHEHARDY.
CHEHARDY, Judge.
This is a civil lawsuit seeking damages from a child molester who was a police officer. The suit also seeks recovery from the town for whose police department he worked. We affirm a summary judgment dismissing the municipality and its insurer.
On January 30, 1998 Michael Jacobs and Ameera Cooper filed suit against Terry Smith; his wife, Levern Smith; their homeowners' insurer; Terry Smith's employer, the City of Lutcher and the Lutcher Police Department; and the Louisiana Municipal Association.[1] Plaintiffs alleged that between May 1996 and November 1996, Lutcher Police Officer Terry Smith repeatedly raped their 12-year-old daughter, E.C., resulting in the child's pregnancy and eventual delivery of an infant in July 1997.[2]
The Louisiana Municipal Association ("LMA") and the City of Lutcher ("Lutcher") answered, admitting that during 1996 Terry Smith was a police officer with the Lutcher Police Department, but denying that he was acting in the course and scope of his employment during the time of the incidents and denying that Lutcher was vicariously liable for his intentional and/or unlawful acts.[3]
Terry Smith, now incarcerated, filed a pro se answer as follows:
I deni [sic] that which was written in the suit. Because nothing ever happen while I was in color nor was there any force.... The suit also cliamed [sic] that my wife (Laverne Smith) wouldn't prevent that what happen is also false because she didn't know.
Lutcher and LMA filed a motion for summary judgment, asserting they were not liable because the actions of Terry Smith were outside the course and scope of his employment. In support of the motion defendants attached a statement of uncontested material facts, which stated as follows:
1. On January 20, 1995, Terry Smith was hired as a full time officer for the City of Lutcher Police Department.
2. Prior to being hired as a full time officer, Terry Smith's background was checked and revealed no misconduct of a sexual nature whatsoever.
3. From May through November of 1996, Terry Smith was employed as a full time Police Officer with the City of Lutcher Police Department.

*181 4. Officer Smith was suspended, without pay, by the City of Lutcher, through its Police Department, on January 7, 1997.
5. On November 4, 1997, Terry Smith pled guilty to two counts of aggravated crime against nature and two counts of sexual battery....
6. Terry Smith resigned from the City of Lutcher Police Department on December 2, 1997.
Defendants also attached the affidavit of Denny Vicknair, the Lutcher police chief, who averred that Terry Smith had been hired as a full-time police officer on January 20, 1995; that before he was hired, the affiant personally and through his assistant chief performed a background check on him; that the background check revealed no misconduct of a sexual nature or claims in any fashion associated with the sexual conduct or misconduct of Terry Smith; that the affiant, as chief of police, had suspended Terry Smith with pay on January 2, 1997, as soon as the affiant became aware of the claims against him; that Smith was subsequently suspended without pay on January 7, 1997; that Terry Smith resigned from the police department on December 2, 1997; and that at the time of the incident Terry Smith was the legal guardian of E.C., the victim.
Also filed in support of the motion were relevant pleadings from the criminal prosecution of Terry Smith, demonstrating that on November 4, 1997 he entered guilty pleas to two counts of sexual battery and two counts of aggravated crime against nature. The trial court's reasons for sentencing mentioned that a letter from the 12-year-old victim related "her pain and enduring bad memories ... a miserable school year and summer vacation and mental and physical suffering with a six inch stomach scar as a constant reminder." The sentencing judge made the findings that the defendant's conduct during commission of the offenses manifested deliberate cruelty to the victim, the offender knew that the victim was particularly vulnerable or incapable of resistance due to extreme youth, the offender used his position and status to facilitate the commission of the offense, the defendant used threats of and actual violence in the commission of the offense, and the offense resulted in significant and permanent injury to the victim.
In addition the motion attached a report on genetic testing to establish paternity of the child borne by E.C. The report stated, "The alleged father, Terry Smith, is not excluded as the biological father of the child, Baby of [E.C.] Based on the genetic testing results obtained by DNA analysis, the probability of paternity was 99.999% as compared to an untested, unrelated, random person of the Black population."
A further exhibit in support of the motion was a copy of a letter from Terry Smith stating,
I (Terry L. Smith) would like to apologize to the Town of Lutcher and to those who put their trust in me. I will be leaving my post as a policeman of the town of Lutcher. Because of my incarceration I can no longer perform my duties as a police officer. But to the Mayor and board I would like to thank you for letting me forfill [sic] my dream by hiring me. I did my job to the test I could but agian [sic] I apologize for letting you down.
The deposition of Terry Smith was made part of the record. Smith testified as follows: E.C., who was his wife's niece, began living with him and his family in February of 1996 after her mother was arrested and incarcerated. At the time Smith was working for the Lutcher Police Department as a patrolman. He worked the day shift, from 8:00 a.m. to 4:00 p.m. On weekends he worked the night shift, from 6:00 p.m. to 2:00 a.m. The occasions when he had relations with E.C. were never when he was working the day shift. He said they always took place at night, when his wife was away at work.
*182 Asked about rules and regulations of the Lutcher Police Department concerning off-duty behavior, Smith stated he did not remember. He said he did not think there was a law stating he would have to intervene in a fight or other situation if he was off-duty. When he first got hired, he used to wear a badge with a pocket holder when he would go to the store but he was told not to wear the badge out like that, so he stopped the practice. He said he never touched E.C. while he was in uniform and he insisted that any relations always took place later in the evening, after he had gotten off work and changed clothes.
Finally, Smith stated, "I did what I did, me, myself.... There's no way to justify it even if, you know, somebody told somebody to do this to me or whatever, but I did what I did, you know, and it's nobody else's responsibility....Police officer had nothing to do with it."
In response to the motion for summary judgment, plaintiffs filed the affidavit of E.C., the victim, and of her mother. In her affidavit E.C. stated,
Many of the times Officer Terry Smith molested and had sexual relations with me was in the afternoons, after my school day while he was still on duty. He would be at the house waiting for us when we got home. He would tell Shakira [Smith's stepdaughter] to go to the park, and he and I would go inside where this would happen. Sometimes, he would not even take [his] police uniform off, but just his gun belt. When he was finished he would pull up his pants, on his belt and leave and go back to work. He was driving his police car.
Officer Terry Smith used to make do [sic] the sexual things with him and he told me that if I didn't he would keep my mother in jail, because he was a police man.
My sister [L.C.W.] told me several times in early 1996 that Officer Terry Smith tried to initiate sexual contact with her. She also told me in May 1996 that she was leaving to move in with my grandfather because Terry Smith kept putting his hands on her in an offensive manner.
Ameera Cooper stated in her affidavit, "My daugther [sic] [L.C.W.] told [me] that in May 1996 she left the Smith house to move in with my grandfather because Terry Smith kept putting his hands on her in an offensive manner."
On appeal plaintiffs assert that Terry Smith used his apparent authority as a police officer to threaten E.C. with keeping her mother in jail longer if she did not cooperate with him. Further, plaintiffs argue, Smith was on patrol or performing some other job function which gave him the opportunity to place himself at his home in the early afternoon hours when E.C. would arrive home from school and he was in a squad car, in uniform, and carrying a side arm: "No other citizen would question his presence in the mid-afternoon, because he is a police officer, which further facilitated his tortious conduct. His position as a police officer, and his activities within the scope of his employment provided him with the opportunity and `camouflage' to continuously molest and rape [E.C.]."
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). Summary judgment is favored and "is designed to secure the just, speedy, and inexpensive determination of every action." La. C.C.P. art. 966(A)(2).
Any decision as to the propriety of a grant of the motion must be made with reference to the substantive law applicable to the case. Only in the context of the applicable substantive law can issues of material fact be ascertained. Sun Belt Constructors, a Div. of MCC Constructors, *183 Inc. v. T & R Dragline Service, Inc., 527 So.2d 350, 352 (La.App. 5 Cir.1988).
La. C.C. art. 2320 states,
Masters and employers are answerable for the damage occasioned by their servants and employees, in the exercise of the functions in which they are employed.
* * *
Responsibility only attaches, when the masters or employers ... might have prevented the act which caused the damage, and have not done it.
In the application of Article 2320, an employer's vicarious liability for conduct not his own extends only to the employee's tortious conduct which is within the course and scope of employment. Orgeron v. McDonald, 93-1353 (La.7/5/94) 639 So.2d 224, 226. "Generally speaking, an employee's conduct is within the course and scope of his employment if the conduct is of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer." Id. at 226-227.
The factors to be considered in determining whether an employer may be liable for an intentional tort of an employee are whether the tortious act was primarily employment rooted, reasonably incidental to the performance of the employee's duties, occurred on the employer's premises, and occurred during the hours of employment. LeBrane v. Lewis, 292 So.2d 216, 218 (La.1974). Only tortious conduct so closely connected in time, place, and causation to the employment duties as to be regarded as a risk of harm fairly attributable to the employer's business imposes vicarious liability on an employer. Id. Conduct motivated by purely personal considerations entirely extraneous to the employer's interests does not. Id.
In Baumeister v. Plunkett, 95-2270 (La.5/21/96) 673 So.2d 994, the court held an employer was not vicariously liable for a sexual attack by one employee on another that occurred during working hours. Applying the LeBrane factors, the court found the assault was not within the scope of the attacker's employment and that the conduct was neither primarily employment rooted nor reasonably incidental to the performance of the employee's duties.
Similarly, in Patterson v. Al Copeland Enterprises, Inc., 95-2288 (La.App. 4 Cir. 1/19/96) 667 So.2d 1188, writ denied, 96-0723 (La.11/22/96) 683 So.2d 1196, the court of appeal found a supervisor's rape of an employee could not be attributed to the employer because it was not related to the rapist's employment duties, did not further his employer's objectives, was not a risk of harm fairly attributable to his employer's business, and was done for purely personal considerations entirely extraneous to his employer's interest.
Appellants cite a number of cases in which the employing governmental authority was held liable for tortious acts by law officers-Latullas v. State, 94 2049 (La.App. 1 Cir. 6/23/95) 658 So.2d 800; Applewhite v. City of Baton Rouge, 380 So.2d 119 (La.App. 1st Cir.1979); Primeaux v. U.S., 102 F.3d 1458 (8th Cir.1996). Those cases are distinguishable from this one, however, because in each the offensive acts were committed while the officer was in performance of official duties.
Appellants point out there are disputed facts, specifically whether Smith's acts were committed while he was on duty and/or while he was in uniform and whether he made threats to keep the victim quiet using his position as a police officer. Even if plaintiffs' version of these facts is taken as true, however, they are not material to the liability of Lutcher and LMA.
Scott's rape of E.C. cannot be considered as either employment-rooted or reasonably incidental to the performance of his duties as a police officer. The acts obviously were not in furtherance of the interests of his employer. The acts did *184 not occur on property of either the police department or the town of Lutcher. Although it is disputed whether some of the acts may have occurred during Scott's hours of employment, it is immaterial whether they did. The acts took place within his home and were perpetrated upon a member of his family, not a member of the general public.
The sole fact that an officer was dressed in his employment uniform does not create a material issue of fact. Luccia v. Cummings, 94-416 (La.App. 5 Cir. 11/16/94) 646 So.2d 1142, 1144, writ denied, 94-2983 (La.2/3/95) 649 So.2d 406. It is immaterial that Scott may have committed sex acts with E.C. during his work shift. E.C. was a member of his household and was his niece by marriage. He was neither directing her activities nor was he stopping her on the street in the course of his duties as a police officer.
Scott's behavior cannot be considered a risk of harm fairly attributable to his employer's business interests. Rather, his conduct must be seen as "motivated by purely personal considerations entirely extraneous to the employer's interests." Le-Brane v. Lewis, supra.
Scott's alleged threats to E.C. to extend her mother's incarceration if she did not comply are the only aspect of his behavior that could be said to support plaintiffs' argument of apparent authority. Nevertheless, she was his niece, a child, and a member of his household. The incarceration threats alone are not sufficient to extend liability for Scott's acts of incest to his employer.
Accordingly, we conclude the trial court did not err. The summary judgment dismissing the City of Lutcher and the Louisiana Municipal Association is affirmed. Each party is to pay their own costs for this appeal.
AFFIRMED.
CANNELLA, J., dissents with reasons.
CANNELLA, J., dissenting with reasons.
Plaintiffs assert that the trial judge erred in granting the summary judgment by failing to recognize that Smith abused his "apparent authority" as a police officer, thereby exposing the Town of Lutcher to respondeat superior liability.
Plaintiffs contend that Smith was in the course and scope of his employment when he raped the child and abused his affirmative duty as a police officer to protect her. They argue that Smith used his authority to threaten the child with using his power to keep the child's mother in jail if the child failed to do what he wanted. Further, they argue that his job gave him the opportunity to place himself at his home in the early afternoon hours when the child would be home. Plaintiffs contend, by affidavits, that the rapes here occurred while Smith was on duty and in uniform and that, when the rapes occurred, Smith was driving a squad car and carrying a side arm and this gave him the camouflage to facilitate his tortious conduct. In addition, because of his authority as a police officer, he was able to coerce the child into submission because she would believe that he had the authority to carry out his threats against her mother because of his position as a police officer.
In the case of Applewhite v. City of Baton Rouge, 380 So.2d 119 (La.App. 1st Cir.1979), the Court found that the police are in a unique position to take advantage of the public if their personal desires permeate their better judgment. Plaintiffs note that the Applewhite case has enjoyed wide geographic application. See: Primeaux v. U.S., 102 F.3d 1458 (8th Cir. 1996).
The child in this case was faced with a guardian who had power over her, but in addition, this guardian was also a police officer, who is alleged to have been in full regalia during the rapes. In his capacity as a police officer, the child allegedly believed he had the power to hold her mother in jail. These facts are distinguishable *185 from the cases cited by defendants. Further, the reason why the child submitted to Smith appears to be an issue of disputed fact since defendants claim she submitted because of Smith's position as guardian and plaintiffs assert that she submitted because of the guardian's position as a police officer. Thus, I would find that the summary judgment was improperly granted.
NOTES
[1] The suit was originally filed using the pseudonyms "John Doe and Jane Doe," but later amended to substitute the names of Michael Jacobs and Ameera Cooper.
[2] We use the victim's initials to preserve her privacy, due both to her status as a juvenile and to the nature of the acts she endured.
[3] The Louisiana Municipal Association provides insurance for the City of Lutcher.