778 So.2d 1169 (2001)
Cathy LEE
v.
DELTA AIR LINES, INC., and Eugene Galassi.
No. 00-CA-1034.
Court of Appeal of Louisiana, Fifth Circuit.
January 30, 2001.
*1170 Clement P. Donelon, Metairie, LA, Counsel for plaintiff-appellant.
Keith M. Pyburn, Jr., McCalla, Thompson, Pyburn, Hymowitz & Shapiro, New Orleans, LA, and Andrea L. Bowman, Delta Airlines, Inc., Atlanta, GA, Counsels for defendants-appellees.
Court composed of Judges CHEHARDY, McMANUS and H. CHARLES GAUDIN, Judge Pro Tempore.
*1171 CLARENCE E. McMANUS, Judge.
The instant matter arises out of Plaintiff-Appellant's claim that she was sexually harassed at her place of employment. For the reasons that follow, we affirm the summary judgment entered in favor of Defendant-Appellee, Lee's former employer, Delta Airlines.

STATEMENT OF THE CASE
This matter was instituted on February 16, 1995, when Plaintiff-Appellant, Cathy Lee, filed a Petition for Damages naming as defendants Appellee, Delta Air Lines, Inc., and Eugene Galassi, a former employee of Delta.
Delta filed a Motion for Summary Judgment on January 31, 2000; the motion was heard on February 18, 2000. Judgment was granted in Delta's favor at the conclusion of the hearing; a written judgment was signed on February 24, 2000.
On February 28, 2000, the trial judge designated the above judgment as a "final" judgment under LSA-C.C.P. art.1915, and on March 29, 2000, the trial judge signed an order which included a finding that there was no reason to delay an appeal from the summary judgment.
Lee's Motion for Devolutive Appeal was filed March 29, 2000.

FACTS
The following facts are gleaned from the documentary evidence submitted in connection with the motion for summary judgment.
The incident in question occurred on October 9, 1994, at the New Orleans International Airport. The individual Defendant, Eugene Galassi is, and had been before the hearing above, deceased.
The record contains parts of a deposition given by Lee, in which the following testimony is found, including a description of the incident which gives rise to this suit. Lee stated that on the date in question, while she was at her desk using the phone, Galassi stood behind her and "rubbed" his genitals against her in an action which she interpreted as sexual in nature. When Lee screamed and ordered Galassi to "stop," he did so. However, Lee testified that once he had stopped, he laughed at her and told her to "get off the Goddamn telephone." Lee did testify that Galassi had never touched her before this incident, but had, on an unspecified number of occasions, called her a bitch.
Lee testified that Galassi had been employed by Delta as a baggage handler, and that his job entailed removing luggage from moving belts to place it onto carts. She also testified that Galassi "had no business" near her desk, that his job did not involve doing any work at the desk where she had been seated when the incident occurred.
Lee testified that she subsequently asked that Galassi not be allowed to work near her. However, she stated that she had seen Galassi at least once after the above incident, when he had been assigned to work in her area. Lee stated that she had spoken with "Scuddy" about the incident, but could not remember when. She also admitted that she "may have" told Mr. Decareaux that she did not want to "do anything" about the incident, that she didn't want to "deal with it" at that time.
Lee also executed an affidavit regarding the incident in February of 2000, some six years after the incident took place. In the affidavit, Lee related that Galassi had "come up from behind her and rubbed his genitalia against her buttocks." She stated that she had been tremendously upset and frightened during the incident. Lee also stated that "it was clear to her that Galassi rubbed himself up against her because he was mad at her because she was on the phone and not working." Finally, in her affidavit, Lee stated that she had been unaware of any Delta policy against sexual harassment.
Lee's handwritten note reporting the incident, addressed to Mr. Fred Scudgins, *1172 and dated October 25, 1994, is also found in the record. In the note, Lee complained that "Gene sneaked up behind me and put his arms over my shoulders and began making heavy body contact on my buttocks with his penis, grinding and rolling on me. I dropped the telephone screaming and fighting Gene off of me." She also stated in the letter that she had been afraid Gene would harass her again, and requested that she and he not be assigned to work together again.
The record includes other documentary evidence.
By way of a letter dated December 28, 1994, Fred H. Scudgins, the supervisor of operations services, reported the incident to Linda Small, the station manager of Delta's facilities at the airport. In the letter, Scudgins informed Small that Lee had, at first, been unwilling to cooperate in an investigation of the incident, that she had told him she "did not want to make a big deal" out of the incident. Scudgins noted in the letter that Lee's written statement had only been provided to him after Galassi had resigned from Delta, over an incident unrelated to the incident with Lee.
In a memo from Herb Poche (whose position is not indicated) to Scudgins, Poche related that Lee had not wanted to "discuss or report" the incident.
An affidavit by Leo A. Decareaux is included in the record, in which Decareaux states that Galassi had admitted to "dancing" behind Lee, but had denied actually making physical contact with her. In the affidavit, Decareaux stated that he had reprimanded Galassi, and had threatened possible job loss as a result of any further such conduct. In addition, Decareaux stated that Galassi had not been permitted to work in the bag room after the one incident.
The record also contains a sheet outlining Delta's "Standard Practice" regarding sexual harassment. The sheet contains the following language:
SEXUAL HARASSMENT
It is Delta's policy to provide a work environment free of unnecessary and inappropriate distractions, including harassment of employees on the basis of sex. Accordingly, Delta strictly prohibits sexual harassment.
Sexual harassment includes unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature such as uninvited touching or sexually related comment when:
. . .
C. The conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment.
Sexual harassment is serious misconduct that may result in disciplinary action up to and including discharge.
Finally, we note that the record contains some portions of a deposition given by Dr. Robert Ancira in which Dr. Ancira testified that Lee had suffered Post-traumatic Stress Disorder as a result of the incident.

LAW AND ARGUMENT
Plaintiff has filed several assignments of error, all relating to the trial judge's oral reasons for judgment. However, this matter comes to us as a review of a summary judgment: our review of the trial judge's findings are therefore of a severely limited scope. Instead, in determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). In addition, any decision as to the propriety of a grant of the motion must be made with reference to the substantive law applicable to the case. Only in the context of the applicable substantive law can issues of material fact be ascertained. Doe v. Louisiana Mun. Ass'n, 99 *1173 539, at 6-8 (La.App. 5 Cir. 10/26/99), 746 So.2d 179, 182-83.
A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits submitted, if any, show there is no genuine issue of material fact such that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Reynolds v. Select Properties, Ltd., 93-1480, at 2 (La. 4/11/94), 634 So.2d 1180, 1182. There must be a "genuine" or "triable" issue on which reasonable persons could disagree. A fact is material if its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. Rowley v. Loupe, 96-918 at 5 (La.App. 5 Cir. 4/9/97), 694 So.2d 1006, 1008-09 (citations omitted).
Lee's original petition set out two possible theories of liability against Delta. First, Lee asserted that Delta was at fault because Galassi's actions had created a hostile work environment on the basis of gender. Lee also claimed that Delta was liable for Galassi's actions, as his employer, under the doctrine of respondeat superior.
To maintain an action against an employer alleged to have fostered a hostile work environment, Lee was required, at the time of the incident in question, to meet the burden of proof established under LSA-R.S. 23:1006[1], which stated, in pertinent part:
B. It shall be unlawful discrimination in employment for an employer to:
(1) Intentionally fail or refuse to hire, refer, discharge, or to otherwise intentionally discriminate against or in favor of an individual with respect to compensation, terms, conditions, or privileges of employment, because of race, color, religion, sex, or national origin; or
(2) Intentionally limit, segregate, or classify an employee in a way which would deprive an individual of employment opportunities, give favor or advantage to one individual over another, or otherwise adversely or favorably affect the status of an employee because of race, color, religion, sex or national origin.
Hostile environment harassment consists of verbal or physical conduct that has the effect of creating an intimidating, hostile, or offensive work environment. To prevail in a hostile environment harassment claim, the plaintiff must assert and prove that: (1) she belonged to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the sexual harassment and failed to take proper remedial action ... Every act of harassment, although reprehensible, does not necessarily give rise to a hostile environment claim. To be actionable, the harassment must be sufficiently severe or pervasive as to alter the conditions of the victim's employment and create an abusive, hostile environment. In general, hostile environment harassment is characterized by multiple and varied incidents of offensive conduct which have the cumulative effect of creating a hostile working environment for the employee thus victimized. Craven v. Universal Life Ins. Co., 95-1168, at 6-7 (La.App. 3 Cir. 3/6/96), 670 So.2d 1358, 1362 (citations omitted). See also Trahan v. Rally's Hamburgers, Inc., 96-1837, at 7 (La.App. 1 Cir. 6/20/97), 696 So.2d 637, 641.
Lee has clearly failed to make such a showing. There were no "multiple" or varied incidentsthere was but one incident. Lee testified that the touching had occurred but once. The notion of a cumulative effect, therefore, has no meaning here. *1174 Nor can we classify the one touching incident as "severe." And though we agree with the trial judge's apt characterization of Galassi's actions as "suggestive," we cannot say that this single incident was threatening. We can't say that Lee was threatened with any actual harm, nor do we find that Galassi's acts were a threat of any additional or more intrusive behavior. The conduct in question simply did not rise to such a level of offensiveness as to have created an abusive environment. We note, finally, that Lee's several comments to Delta supervisors immediately after the incident, statements in which she indicated an unwillingness to "make a big deal" out of the incident, weigh heavily against our being able to credit her assertions that she was traumatized by the incident.
We further note that these statements would serve to almost completely relieve Delta of having taken any remedial steps, if they had not taken such action. However, though Lee at first hesitated to cooperate with Delta's efforts to remove the objectionable conditions, Delta did, in accordance with their policy of "strictly" prohibiting sexual harassment, remove Galassi from the duties which brought him into contact with Lee.
Nor do we find that Lee has carried her burden to show that Delta should be vicariously liable for Galassi's actions.
An employer's vicarious liability for conduct not his own extends only to the employee's tortious conduct which is within the course and scope of employment. Generally speaking, an employee's conduct is within the course and scope of his employment if the conduct is of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer. The factors to be considered in determining whether an employer may be liable for an intentional tort of an employee are whether the tortious act was primarily employment rooted, reasonably incidental to the performance of the employee's duties, occurred on the employer's premises, and occurred during the hours of employment. Only tortious conduct so closely connected in time, place, and causation to the employment duties as to be regarded as a risk of harm fairly attributable to the employer's business imposes vicarious liability on an employer. LeBrane v. Lewis, 292 So.2d 216, 218 (La.1974); Felix v. Briggs of Oakwood, Inc., 99-721 at 4 (La.App. 5 Cir. 12/15/99), 750 So.2d 1091, 1092-93. Conduct motivated by purely personal considerations entirely extraneous to the employer's interests does not. Doe v. Louisiana Mun. Ass'n, 99-539 at 7, 746 So.2d at 183 (citing LeBrane).
Lee described Galassi's job as handling luggage-shifting it from conveyor belts to carts. This being so, we cannot bring to mind any scenario in which Galassi's suggestive dancing would assist him in performing his job. Try as we might, we can't imagine any situation in which the complained of actions would be "employment rooted" or "incidental" to Galassi's job. In addition, Lee herself stated that Galassi had "no business" near her desk while he was at work. Galassi was, therefore, neglecting his duties when the incident occurred. And though Lee argues that Galassi's commentthat Lee should get off the phone and get back to workwas made in furtherance of Delta's interest, we simply can't agree that this comment, which Lee herself stated had been made after Galassi had touched, then laughed at her, was genuinely meant to prompt Lee to return to her own duties.
We can't see that any reasonable minds would find Delta responsible for Galassi's single spontaneous, unprofessional, extracurricular assaultcommitted in violation of their express policy against such activity, and for which he was, apparently, severely disciplined. Lee has not demonstrated the conditions necessary to maintain an action under either above theory of liability.
*1175 The trial judge was correct to have granted the summary judgment; the judgment is affirmed.
AFFIRMED.
NOTES
[1] The substance of former 23:1006 is currently found in LSA-R.S. 23: 332. See 1997 La. Acts 1409.