MARION F. EDWARDS, Judge.
 

 | ?PIaintiff/appellant, O’Neil Kelley (“Kelley”), appeals a judgment of the district court in favor of defendant/appellee, Weber Marine, Incorporated (“Weber”), dismissing Kelley’s petition on an Exception of No Cause of Action. This is Kelley’s second appeal on the issue.
 

 The facts were recited in
 
 Kelley v. Dyson:
 

 [1]
 

 This is a personal injury suit by an employee against his employer, alleging the employer is liable for negligent retention of a fellow employee who committed an intentional battery on the plaintiff. The trial court granted the employer’s exception of no cause of action, and the plaintiff appeals....
 

 The operative allegations of the Petition for Damages, as amended by the Plaintiffs First Supplemental and Amending Petition, are as follows:
 

 
 *1102
 
 3.
 

 Defendant, Shaun Dyson and petitioner, O’Neil Kelley worked for defendant, Weber Marine, Incorporated. Because of their employment relationship O’Neil Kelley was forced to associate himself with Shaun Dyson.
 

 _k
 
 [4]
 
 -
 

 That on or about July 11, 2007 as O’Neil Kelley was exiting his truck, suddenly and without warning defendant, Shaun Dyson, intentionally kicked petitioner, O’Neil Kelley in the ankle.... As a result of the incident, O’Neil Kelley suffered a broken ankle which required surgery.
 

 5.
 

 This incident occurred after work and off the job site.
 

 6.
 

 Defendant, Shaun Dyson, has violent propensities. He has been in several fights and at least one of the fights that Shaun Dyson provoked was while he was employed with Weber Marine, Incorporated.
 

 6A.
 

 After the above referenced fight, SHAUN DYSON started to harass O’Neil Kelley.
 

 6B.
 

 The harassment included both verbal and physical harassment.
 

 6C.
 

 O’Neil Kelley told the supervisor for Weber Marine Incorporated about the harassment.
 

 6D.
 

 The harassment also included defendant, SHAUN DYSON, following plaintiff, O’NEIL KELLEY after work when both were in their cars. SHAUN DYSON would get dangerously close to O’NEIL KELLEY. Then when O’NEIL KELLEY slowed down, SHAUN DYSON would pass him and then slow his vehicle down.
 

 6E.
 

 After being told of the verbal harassment, the pushing or physical harassment and the harassing in the vehicles, defendant, WEBER MARINE INCORPORATED, still negligently retained SHAUN DYSON.
 

 7.
 

 Because of defendant, Shaun Dyson’s violent propensities, Weber Marine Incorporated was negligent in hiring Shaun Dyson and was further negligent in retaining him after the above mentioned fight on the job site.
 

 Defendant Weber Marine, Inc. (“Weber”) filed a peremptory exception of no cause of action. Weber asserted that even assuming the allegations are true, negligent hiring was not the cause in fact of the assault in which Kelley received his injury. Weber further argued that negligent hiring claims require that the employment provide the employee with a unique opportunity to commit a crime against a third person. Under the allegations of the petition, Weber asserted, the conduct forming the basis of the claim was committed outside the |4course and scope of employment. Weber contended it had no control over what its employees did while away from its employment after working hours.
 

 
 *1103
 
 The trial court granted the exception with written reasons, stating in pertinent part:
 

 The Court finds that Plaintiff has failed to state a cause of action against Weber Marine, Inc. in either its original Petition or its Supplemental and Amending Petition. By Plaintiffs own admission, the incident at issue occurred after work hours and off the jobsite. Weber Marine, Inc. is not liable for the actions of one of its employees against another when that employee is not in the course and scope of employment and the incident did not even occur at the workplace. Weber Marine did not owe a duty to Plaintiff at the time the incident occurred.
 

 Because the plaintiff had already amended the petition, but still failed to state a cause of action, the court dismissed the suit without giving the plaintiff another opportunity to amend his petition.
 

 The plaintiff filed a Motion for Rehearing and/or New Trial, arguing the district court erred because this is not a vicarious liability case, but rather is a negligent hiring case, so course and scope of employment are not at issue. Rather, the plaintiff argued, “the event ... happened immediately after work and in very close proximity to the workplace, making the ease of association between the negligent retention easier to reach.” The plaintiff contended Weber had a duty to provide a safe workplace, and “breached that duty by not terminating Dyson, which kept him in close proximity to Kelley and as a result, O’Neil Kelley received serious injury.”
 

 The court denied the motion for rehearing and/or new trial....
 

 Because Kelley’s petition alleged negligence in the hiring and/or retention of Shaun Dyson (“Dyson”), we noted that, in addition to the other elements of negligence, it was necessary to allege that employment by Weber gave Dyson a unique opportunity to inflict harm on Kelley.
 
 [2]
 
 We affirmed the trial court but remanded the matter, finding that, although Kelley had amended his petition voluntarily .prior to the hearing on the exception, in the interest of justice, he |BshouId have been granted the opportunity to amend it again to try to state a cause of action.
 

 On remand, Kelley filed a Second Supplemental and Amending Petition, alleging:
 

 2.
 

 The fight mentioned in paragraph 6 of the original petition involving Shawn Dyson started when he kicking [sic] a tug boat captain in the ankle with a steel toed boot causing the captain to fall, then jumping on him.
 

 3.
 

 All the above mentioned facts were known by Weber Marine.
 

 4.
 

 Weber Marine required Dyson to wear steel toed boots (his weapon of choice).
 

 5.
 

 Weber Marine was told of the batteries (bumping and pushing) and assaults (threats of serious batteries). Weber Marine still allowed Dyson to continue
 
 *1104
 
 to wear his weapon of choice (steel toed boots)[sic]
 

 6.
 

 This gave Dyson a unique opportunity to commit the tort.
 

 7.
 

 Because Weber Marine' did not fire Dyson after he kicked the tug boat captain in the ankle with a steel toed boot and did not fire Dyson after repeatedly being told by Kelley and others of Dyson’s batteries and threats and still required the two to work together. Weber’s actions gave Dyson a unique opportunity to commit the tort against Kelley.
 

 8.
 

 Because of Weber Marine’s knowledge of the previous fight and the batteries and assaults on Kelley, they had a duty to separate jobs or fire Dyson.
 

 9.
 

 With knowledge coznes duty.
 

 10.
 

 The pushing, bumping and screaming threats on the day of the incident occurred on the job site and the aggravated batteries occurred immediately after the threats and across the street from the work site. This was a continuing tort that started on the work site.
 

 | ,;In response, Weber filed another Exception of No Cause of Action, urging that no new facts had been pleaded upon which a cause of action could be based. Weber argued that allegations in the second petition were legal conclusions which did not supply additional facts upon which a cause of action could be based.
 

 The trial court again granted the exception, finding that Weber’s steel toed boot requirement did not afford Dyson with a unique opportunity to commit a tort upon Kelley. It is this second judgment of dismissal before us on this appeal.
 

 Kelley urges that the cases cited in our previous opinion regarding negligent hiring, supervision, or retention of employees are distinguishable because the plaintiffs in those cases were third party non-employees. Rather, Kelley insists in this appeal, as in the previous appeal, that Weber violated its duty to him under La. R.S. 23:13 in failing to provide a safe workplace. Kelley further urges that the “unique opportunity” requirement is not an element in an ordinary negligence suit.
 

 On remand, Kelley’s attempt to allege the unique opportunity for harm was the allegation that Weber allowed Dyson to wear steel toed boots, “his weapon of choice.” Such safety boots were required to be worn by all Weber employees. Kelley further alleged that, because Weber did not fire Dyson after he kicked the tug boat captain with a steel toed boot, and did not fire Dyson after repeatedly being told by Kelley and others of Dyson’s batteries and threats but still required the two to work together, Weber’s actions gave Dyson a unique opportunity to commit the tort against Kelley. Finally, Kelley urges that the threats on the day of the incident occurred on the job site and the aggravated batteries occurred immediately afterward, across the street from the work site and, thus, was a continuing tort that started on the work site.
 

 A court of appeal reviews
 
 de novo
 
 a lower court’s ruling sustaining an exception of no cause of action because the exception raises a question of law and |7because the lower court’s decision is generally based only on the sufficiency of the petition. The question is whether, in the
 
 *1105
 
 light most favorable to the plaintiff, the petition states any valid cause of action for relief.
 
 [3]
 
 The petition should not be dismissed merely because plaintiffs allegations do not support the legal theory he intends to proceed on, since the court is under a duty to examine the petition to determine if the allegations provide for relief on any possible theory.'
 
 [4]
 

 As a cause of action in negligent hiring/retention, neither the requirement that the employees wear steel toed boots on the job, nor the failure to fire Dyson were “unique opportunities to commit a tort” against Kelley. The assault at work alleged in the petition was committed against another employee, and there is no claim that Kelley was involved in that action. More significantly, the “harassment” by Dyson and the subsequent injury to Kelley took place after work and off the jobsite.
 

 La. R.S. 23:13 mandates that an employer provide a safe workplace. In an attempt to forge an employment-related connection, Kelley characterized the altercation at work as having spilled over into the offsite assault and, thus, was a “continuing tort.” The conduct in question is not a continuing tort for several reasons, not the least of which is that for there to be a continuing tort, there must be a continuing duty owed to the plaintiff and a continuing breach of that duty by the defendant.
 
 [5]
 

 An employee may apply general principles of tort law to hold his employer vicariously liable for some damages arising out of an intentional tort committed by his co-employee.
 
 [6]
 

 Is An employer’s vicarious liability for conduct not his own extends only to the employee’s tortious conduct which is within the course and scope of employment. Generally speaking, an employee’s conduct is within the course and scope of his employment if the conduct is of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer. The factors to be considered in determining whether an employer may be liable for an intentional tort of an employee are whether the tortious act was primarily employment rooted, reasonably incidental to the performance of the employee’s duties, occurred on the employer’s premises, and occurred during the hours of employment. Only tortious conduct so closely connected in time, place, and causation to the employment duties as to be regarded as a risk of harm fairly attributable to the employer’s business imposes vicarious liability on an employer.
 
 LeBrane v. Lewis,
 
 292 So.2d 216, 218 (La.1974);
 
 Felix v. Briggs of Oakwood, Inc.,
 
 99-721 at 4 (La.App. 5 Cir. 12/15/99), 750 So.2d 1091,1092-93. Conduct motivated by purely personal considerations entirely extraneous to the employer’s interests does not.
 
 Doe v. Louisiana Mun. Ass’n,
 
 99-539 at 7, 746 So.2d [179] at 183 [ (La.App. 5 Cir.10/26/99) ] (citing
 
 LeBrane
 
 ).
 
 [7]
 

 
 *1106
 
 Under the circumstances alleged here, the assault was not employment rooted or incidental to the performance of Dyson’s duties. Weber had no duty to protect Kelley from an intentional act committed by a co-employee after hours, off the worksite, and which did not occur in the course and scope of employment. Other cases involving employee assaults against co-employees that have resulted in employer liability were job-related, having taken place on the jobsite, or while in the course and scope of employment.
 
 [8]
 

 The circumstances alleged here do not constitute a violation of La. R.S. 23:13. Our examination of the petition discloses no facts which would support a cause of action against Weber.
 

 | aThe decision to allow amendment is within the sound discretion of the trial court. Where amendment would be a vain and useless act, however, amendment of the petition is not required prior to dismissal of the action.
 
 [9]
 
 We find that another remand to allow Kelley to amend would be useless. The judgment on appeal granting the Exception of No Cause of Action, dismissing the suit with prejudice, is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . 08-1202 (La.App. 5 Cir. 3/24/09), 10 So.3d 283, 285-86.
 

 [2]
 

 . Citing
 
 Griffin v. Kmart Corp.,
 
 00-1334 (La. App. 5 Cir. 11/28/00), 776 So.2d 1226;
 
 Roberts v. Benoit,
 
 605 So.2d 1032 (La.1991);
 
 Smith v. Orkin Exterminating Co., Inc.,
 
 540 So.2d 363 (La.App. 1 Cir.1989);
 
 Jackson v. Ferrand,
 
 658 So.2d 691 (La.App. 4 Cir.1994);
 
 Lou-Con, Inc. v. Gulf Bldg. Serv., Inc.,
 
 287 So.2d 192 (La.App. 4 Cir. 1973),
 
 writs denied,
 
 290 So.2d 899 and 290 So.2d 901.
 

 [3]
 

 .
 
 Kent v. Epherson,
 
 03-755 (La.App. 5 Cir. 12/9/03), 864 So.2d 708.
 

 [4]
 

 .
 
 In re Interdiction of Greenblatt,
 
 01-300 (La.App. 5 Cir. 10/17/01), 800 So.2d 922 (citing
 
 City of New Orleans v. Bd. of Comm'rs of Orleans Levee Dist.,
 
 93-0690 (La.7/5/94), 640 So.2d 237).
 

 [5]
 

 .
 
 Crump v. Sabine River Auth.,
 
 98-2326 (La.6/29/99), 737 So.2d 720.
 

 [6]
 

 -
 
 See, Payne v. Tonti Realty Corp.,
 
 04-752 (La.App. 5 Cir. 11/30/04), 888 So.2d 1090,
 
 writ denied,
 
 05-0192 (La.4/1/05), 897 So.2d 606.
 

 [7]
 

 .
 
 Lee v. Delta Air Lines, Inc.,
 
 00-1034 (La. App. 5 Cir. 1/30/01), 778 So.2d 1169, 1174.
 

 [8]
 

 . Compare
 
 Quebedeaux v. Dow Chem. Co.,
 
 01-2297 (La.6/21/02), 820 So.2d 542; also
 
 Do-mingue ex rel. Domingue v. Allied Discount Tire and Brake, Inc.,
 
 02-1338 (La.App. 1 Cir. 5/9/03), 849 So.2d 690,
 
 writ denied,
 
 03-1605 (La. 10/3/03), 855 So.2d 320.
 

 [9]
 

 .
 
 Kent v. Epherson,
 
 03-755 (La.App. 5 Cir. 12/9/03), 864 So.2d 708.